IMG-108                                                 NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-2106
_____

ALMAZ USSENOV,
                                                    Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,
                                                    Respondent
_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A088-440-332)
Immigration Judge:  Honorable Mirlande Tadal
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
September 5, 2012
Before:  FUENTES, JORDAN AND VAN ANTWERPEN, Circuit Judges

(Opinion filed:  September 6, 2012)
_____

OPINION
_____

PER CURIAM

Almaz Ussenov, a native of the former USSR and citizen of Kazakhstan, seeks

review of a Board of Immigration Appeals (BIA) opinion denying his application for

asylum, withholding of removal, and protection under the Convention Against Torture

(CAT).  The BIA sustained the adverse credibility determination of the immigration

judge (IJ), and held, as a result, that Ussenov had failed to meet his burden of proof for obtaining relief. For the following reasons, we will deny the petition for review.

Ussenov, who arrived in the United States in March 2010 on a nonimmigrant F-1 visa, was charged with removability under 8 U.S.C. § 1227(a)(1)(C)(i) for failing to attend the program for which he had been admitted to the United States. In response, he applied for asylum and derivative relief, on account of alleged persecution sustained on the basis of nationality, religion, political opinion, and membership in a social group. Administrative Record (A.R.) 440. In a lengthy asylum statement, Ussenov both decried the general conditions in Kazakhstan and told the story of his mistreatment in the country, focusing on several instances of alleged persecution. First, in 2002, he was allegedly pushed off a train by religious extremists, leading to a year-long period of hospitalization. A.R. 450–52. After his recovery, he visited a church, as he was considering converting from Islam to Christianity. Upon leaving the church, he was assaulted, leading to another period of hospitalization. A.R. 452–53. He filed a police report, but was beaten yet again. A.R. 453. Separately, Ussenov described his fear of his brother-in-law, a member of Kazakhstan's national-security apparatus (described variously as equivalent to the FBI or KGB) who assaulted him after a domestic dispute and killed his father, a murder covered up in the official records. A.R. 454–55. This incident led to his wife's divorcing him and taking away their son. A.R. 455. Ussenov worried that, were he to return to Kazakhstan, he would be targeted by people who "desire [his] death and could do it with ease." A.R. 456.

After several continuances, Ussenov appeared pro se before an IJ in January 2011.

His testimony (which was conducted through a translator) was, at times, difficult to follow; Ussenov appeared confused regarding the chronology of the numerous assaults and hospitalizations, and testified about incidents that he had not included in his statement. At several times during the proceedings, the IJ appeared to become exasperated with Ussenov's shifting answers. Ultimately, the IJ denied his application. She found that Ussenov had not testified credibly, which doomed his application, see A.R. 79; in the alternative, even if Ussenov had testified credibly, she concluded that he would not have satisfied the burdens of proof necessary for asylum, withholding, or CAT relief. A.R. 80–90.

On appeal before the BIA, and now represented by counsel, Ussenov assailed, inter alia, the IJ's demeanor during his hearing and the bases of her adverse credibility determination. The appeal was dismissed, and while the BIA acknowledged some errors in the adverse credibility determination, it held that it was not so infirm as to be clearly erroneous. A.R. 3. Thus, because Ussenov had not testified credibly, and because the IJ's behavior did not amount to the denial of a fair hearing, Ussenov had not met his burden for relief. A.R. 4. Ussenov filed a timely, counseled petition for review.

We have jurisdiction under 8 U.S.C. § 1252 to review the BIA's final order of removal. See Borrome v. Att'y Gen., No. 11-1975, ___ F.3d ___, 2012 WL 2914111, at *2 (3d Cir. July 18, 2012). Factual findings, including adverse credibility determinations, are reviewed under the deferential "substantial evidence" standard. See Yusupov v. Att'y Gen., 650 F.3d 968, 989 (3d Cir. 2011). A credibility finding must be upheld on review unless any reasonable adjudicator, finding that it is not supported by "reasonable,

3

substantial, and probative evidence on the record considered as a whole," would be compelled to reverse it. Lin-Zheng v. Att'y Gen., 557 F.3d 147, 155 (3d Cir. 2009) (citations, quotations omitted). Because Ussenov filed his asylum application after May 2005, the REAL ID Act standards governing credibility determinations apply. See Yusupov, 650 F.3d at 991 n.34. Under REAL ID, the trier of fact may base her credibility determination on a variety of factors, without regard to whether any inconsistency, inaccuracy, or falsehood implicates the heart of the claim for relief. 8 U.S.C. § 1158(b)(1)(iii). "An alien's credibility, by itself, may satisfy his burden, or doom his claim." Dia v. Ashcroft, 353 F.3d 228, 247 (3d Cir. 2003) (en banc); see also Hassan v. Holder, 571 F.3d 631, 637 (7th Cir. 2009).

As a preliminary matter, we agree with the Government that the BIA did not "expressly adopt or defer to" the IJ's alternative holding denying Ussenov relief even if he were deemed credible. See Br. for Respondent 33 n.4. As we read the BIA's decision, it affirmed, with modifications, the IJ's adverse credibility determination, and held that *because* Ussenov was not credible, he had failed to meet his burden of proof. Under this construction, because the BIA did not defer to the IJ's decision, we have jurisdiction to review its opinion only. See Nelson v. Att'y Gen., 685 F.3d 318, 320–21 (3d Cir. 2012). Consequently, were we to hold that the credibility determination was not supported by substantial evidence, we would remand to the BIA for consideration of the IJ's alternative conclusion.

However, having carefully considered the evidentiary record compiled in this case, we conclude that the BIA's adverse credibility determination finds substantial support in

4

the record, and must therefore be upheld. The BIA pointed out that Ussenov's testimony regarding police reports varied from his written statement, and declined to credit his alternative explanation that "police reports" were synonymous with letters to the Ministry of Internal Affairs. A.R. 3. More broadly, the BIA was troubled by Ussenov's assertions that there were many additional violent incidents, several of which led to hospitalization, that were not laid out in his asylum application. We agree that he did not adequately show that the many injuries he received affected his memory to the point where this discrepancy would be satisfactorily addressed. In sum, while we have certainly seen adverse credibility determinations based on sounder (and broader) foundations, we cannot conclude that the BIA's decision was so unsupported as to be reversible.

Ussenov argues, in the alternative, that the IJ's conduct, which he describes as "unprofessional and improper," had the net effect of denying him a fair hearing and undermining her adverse credibility determination. Ussenov cites three primary incidents: the first, an exchange regarding the admissibility of X-rays; the second, an "irrational" exertion of pressure in the aim of getting him to assent to the veracity of the materials in his asylum application; and the third, a moment where the IJ appeared to "rebuke" Ussanov for smiling.[1] We agree with the BIA that Ussenov has failed to show prejudice flowing from these incidents, a necessary component of a due-process violation. See Delgado-Sobalvarro v. Att'y Gen., 625 F.3d 782, 787 (3d Cir. 2010).

---

[1] A fourth area of contention, involving the IJ's failure to acknowledge Ussenov's complaints about documents being lost by the management of the detention center, was not raised below and is hence unexhausted and unreviewable. See Castro v. Att'y Gen., 671 F.3d 356, 365 (3d Cir. 2012).

Furthermore, while the exchanges evince a certain impatience, they do not rise to the belligerence, browbeating, and finger-on-the-scale phenomena described by this Court in cases such as Cham v. Attorney General, 445 F.3d 683 (3d Cir. 2006), and Wang v. Att'y Gen., 423 F.3d 260 (3d Cir. 2005).

In sum, because we conclude that the adverse credibility determination was supported by substantial evidence, we are in agreement with the BIA that Ussenov failed to meet his burden of demonstrating entitlement to asylum or the stricter standard for showing that he should be granted withholding of removal; nor, for that matter, are his evidentiary submissions alone sufficient to show that he would more likely than not be "tortured" if returned to Kazakhstan. See Valdiviezo-Galdamez v. Att'y Gen., 663 F.3d 582, 590–91 (3d Cir. 2011) (setting out the tests for relief under all three standards).

Accordingly, we will deny this petition for review.